EXETER MEMORIAL HOSPITAL AS-SOCIATION, dba Memorial Hospital at Exeter, Plaintiff–Appellee,

v.

Kimberly BELSHE, Director, California Department of Health Services, Defendant–Appellant.

**CALIFORNIA HEALTHCARE ASSOCIA-TION, and Association of California Healthcare Districts, Plaintiffs–Appellants,**

v.

**CALIFORNIA DEPARTMENT OF HEALTH SERVICES, Kimberly Belshe, Director, Defendants–Appellees.**

Nos. 97–15016, 97–15274.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 1998.

Decided June 3, 1998.

As Amended June 12, 1998.

As Amended on Denial of Rehearing Sept. 8, 1998.

---

Angela Botelho, Deputy Attorney General, San Francisco, California, for defendant-appellant/defendants-appellees.

Raoul Thorbourne, Deputy Attorney General, Sacramento, California, for defendant and appellant California Department of Health Services.

Byron J. Gross, Hooper, Lundy & Bookman, Inc., Los Angeles, California, for plaintiff-appellee Exeter Memorial Hospital Assoc.

Craig J. Cannizzo, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, California, for plaintiffs-appellants California Healthcare Assoc.

Before: SCHROEDER, BEEZER and BRUNETTI, Circuit Judges.

SCHROEDER, Circuit Judge:

These two appeals raise a question of statutory construction on which reasonable minds can differ. Indeed, two distinguished district judges of this Circuit reached opposite results when faced with it. The issue is whether federal approval was required before a state agency could implement changes to its Medicaid plan in 1995.

Plaintiff Exeter Memorial Hospital Association operates a rural hospital and plaintiff California Healthcare Association is an association of healthcare providers. Each brought suit against the California Department of Health Services challenging the state's implementation of amendments to MediCal, the state's Medicaid plan, before the amendments were approved by the federal government. The plaintiffs maintained that such approval was required; the state maintained that it was not.

Resolution of the issue requires interpretation of the so-called "Boren Amendment" to the Medicaid statutes in 1980. *See* 42 U.S.C. § 1396a(a)(13)(E) (Supp. IV 1980); *see also* 42 U.S.C. § 1396a(a)(13) (Supp. V 1981). We view the issue against the backdrop of the earlier versions of the statutes, and the decisions of our own court in earlier cases raising related issues. *See, e.g., Oregon Ass'n of Homes for the Aging, Inc. v. Oregon,* 5 F.3d 1239 (9th Cir.1993); *Washington State Health Facilities Ass'n v. Washington Dep't of Soc. & Health Servs.,* 698 F.2d 964 (9th Cir.1982) (per curiam).

The district court for the Eastern District of California held that approval was required before implementation of the amendment. Judge Levi relied upon the holding and reasoning of our court in *Washington,* which was subsequently reaffirmed in *Oregon Homes. See Exeter Memorial Hosp. Ass'n v. Belshe,* 943 F.Supp. 1239, 1243 (E.D.Cal. 1996). The district court for the Northern District of California disagreed in an unpublished decision, holding that our decision in *Washington* was based upon language of an earlier statute that the Boren Amendment replaced. Judge Wilken reasoned persuasively from that premise that Congress intentionally chose to carry over into the Boren Amendment language that did not require preapproval, rather than language that included an express preapproval requirement. The language of the provisions of the prior statute as well as the provision enacted as

the Boren Amendment are set forth in the margin.[1]

■ Judge Wilken's opinion in the Northern District is closely reasoned and accurately reflects the changing language of the statutes and regulations. Nevertheless, we ultimately conclude that, in light of our prior decisions, we must agree with the opinion of Judge Levi in the Eastern District holding that approval is required before implementation of amendments to the Plan. We adopt his opinion in *Exeter Memorial Hospital Association v. Belshe*, 943 F.Supp. 1239 (E.D.Cal.1996).

The background facts as well as the statutory and regulatory framework are set out in that opinion and need not be repeated here. The opinion also presents a full discussion of this court's decision in *Washington*, as well as subsequent decisions showing the continuing validity of that opinion. Although the opinion in *Washington* refers to language of the pre-Boren Amendment statute, it also recognizes that at the time it was decided the Boren Amendment was in effect. *See Washington*, 698 F.2d at 965. *Washington* purports to decide the issue before it under then current rather than superceded law. *See id.*

We reaffirmed our holding in *Washington* in *Oregon Homes* when we said that "[a]mendments changing payment methods and standards require [federal] approval." *See Oregon Homes*, 5 F.3d at 1241. Most important, our opinion in *Washington* was premised on the overall statutory framework rather than the particular language of the statute relating to amendments to state plans. That framework required then, and at all relevant times since, that all plans receive approval by the federal government before they may be implemented, and that all amendments to plans must also be federally approved. In *Washington*, we held that from these requirements logically flows the requirement that amendments to plans be approved before implementation. *See Washington*, 698 F.2d at 965. That conclusion is as valid now as it was then, and we follow it in interpreting the Boren Amendment.

■ In 1997, following the district courts' decisions in these cases, the statute was amended again to eliminate the Boren Amendment and establish instead a notice and comment provision. *See* Balanced Budget Act of 1997, Pub.L. No. 105–33, 111 Stat. 251, § 4711 (1997), *codified at* 42 U.S.C.

---

1. The version of the statute effective prior to 1980 contained the following language:

A State plan for medical assistance must provide

(D) for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with section 1320a–1 of this title, which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the plan . . ., and

(E) . . . for payment of the skilled nursing facility and intermediate care facility services provided under the plan on a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary.

42 U.S.C. § 1396a(a)(13) (1976).

In 1980, subparagraph (E) of the statute was amended as follows:

A State plan for medical assistance must provide

(E) for payment . . . of the skilled nursing facility and intermediate care facility services provided under the plan through the use of rates

(determined in accordance with methods and standards developed by the State) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws. . . .

42 U.S.C. § 1396a(a)(13)(E) (Supp. IV 1980).

In 1981, subparagraph (13) was amended as follows:

A State plan for medical assistance must provide

(A) for payment . . . of the hospital, skilled nursing facility, and indeterminate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State . . . .) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws. . . .

(D) Repealed. P.L. 97–35, title XXI, § 2173(a)(10)(A), Aug. 13, 1981, Stat. 809.

(E) Redesignated (A).

42 U.S.C. § 1396a(a)(13) (Supp. V 1981).

§ 1396a(a)(13)(A). The amendment is not retroactive and does not affect our decision for the years prior to its enactment. *See id.* at § 4711(d); *Landgraf v. USI Film Prods.,* 511 U.S. 244, 269–73, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). We express no opinion as to what effect that statute may have upon the validity of any other or future amendments to Medi–Cal.

The judgment of the district court in No. 97–15274 is **REVERSED and REMANDED** for further proceedings. The judgment of the district court granting a preliminary injunction in No. 97–15016 is **AFFIRMED.**